## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT URBAN, On Behalf of Himself And All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>COMCAST CORPORATION, BRIAN L. ROBERTS, RALPH J. ROBERTS, S. DECKER ANSTROM, KENNETH J. BACON, SHELDON M. BONOVITZ, EDWARD D. BREEN, JULIAN A. BRODSKY, JOSEPH J. COLLINS, MICHAEL COOK, JEFFREY A. HONICKMAN, DR. JUDITH RODIN, MICHAEL I. SOVERN, LAWRENCE J. SALVA, and UNKNOWN FIDUCIARY DEFENDANTS 1-30,<br><br>    defendants. | Civil Action: |

## CLASS ACTION COMPLAINT FOR VIOLATIONS
## OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA")

Plaintiff, a participant in the Comcast Corporation Retirement-Investment Plan and the Comcast Spectacor 401(k) Plan (collectively, the "Plans"), which provide retirement opportunities for the employees of Comcast Corporation and its subsidiaries (collectively, "Comcast" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

### INTRODUCTION

1.   This is a class action lawsuit brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against the Plans' fiduciaries, including Comcast, on behalf of Participants in and beneficiaries of the Plans.

2.     From February 1, 2007 to the present (the "Class Period"), the Plans invested in Comcast common stock ("Comcast Stock" or "Company Stock"), which was offered as one of the investment alternatives in the participant Contribution Component of the Plans.

3.     Plaintiff's claims arise from the failure of defendants, defined below, who are the Plans' fiduciaries, to act solely in the interest of the Participants and beneficiaries of the Plans, and to exercise the required skill, care, prudence, and diligence in administering the Plans and the Plans' assets during the Class Period, as required by ERISA.

4.     Specifically, Plaintiff alleges in Count I that defendants breached their fiduciary duties of care and loyalty to Plaintiff and the Participants in violation of ERISA by failing to manage the Plans' investment in Comcast Stock by continuing to offer Company Stock as an investment option, and to make contributions in Company Stock, instead of suitable short-term options within the Plans, when the stock no longer was a prudent investment for Participants' retirement savings.

5.     In Count II, Plaintiff alleges that defendants who communicated with Participants regarding the Plans' assets, or had a duty to do so, failed to provide Participants with complete and accurate information regarding Comcast Stock sufficient to advise Participants of the true risks of investing their retirement savings in Company Stock.

6.     In Count III, Plaintiff alleges that defendants, responsible for the selection, removal, and, thus, monitoring of the Plans' fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate.

7.      In Count IV, Plaintiff alleges that defendants breached their duties and responsibilities to avoid conflicts of interest and serve the interests of the Participants in and beneficiaries of the Plans with undivided loyalty.

8.      In Count V, Plaintiff alleges that defendants breached their duties and responsibilities as co-fiduciaries in the manner and to the extent set forth.

9.      Finally, in Count VI, Plaintiff states a claim against Comcast for knowingly participating in the fiduciary breaches alleged herein.

10.     This action is brought on behalf of the Plans and seeks losses to the Plans for which defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).  In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

11.     As a result of defendants' breach of their fiduciary duties, as hereinafter enumerated and described, the Plans suffered substantial losses, resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plans' Participants.  Under ERISA, the breaching fiduciaries are obligated to restore to the Plans the losses resulting from their fiduciary breaches.

12.     Because Plaintiff's claims apply to the Participants and beneficiaries as a whole, and because ERISA authorizes Participants such as Plaintiff to sue for plan-wide relief for breach of fiduciary duty, Plaintiff brings this lawsuit as a class action on behalf of all Participants and beneficiaries of the Plans during the Class Period.  Plaintiff also brings this action as a participant seeking relief for defendants' breach of fiduciary duty on behalf of the Plans.

13.    In addition, because Plaintiff's claims are based, for the most part, solely on information and documents in defendants' possession, certain of Plaintiff's allegations are by necessity based upon information and belief.  At such time as Plaintiff has had the opportunity to conduct additional discovery, Plaintiff will, to the extent necessary and appropriate, further amend the Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## JURISDICTION AND VENUE

14.    ***Subject Matter Jurisdiction.***  This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l).  In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

15.    ***Personal Jurisdiction***.  ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All defendants are residents of the United States, accordingly, this Court has personal jurisdiction over the defendants.  This Court also has personal jurisdiction over defendants pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they would be subject to the jurisdiction of a court of general jurisdiction in this District.

16.    ***Venue***.  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plans were administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some defendants reside or maintain their primary place of business in this district.

## PARTIES

**Plaintiff**

17.    ***Plaintiff Robert Urban*** is a resident of the Commonwealth of Pennsylvania. Plaintiff is a former Comcast employee and is a participant in the Plans.

**Defendants**

18.    ***Defendant Comcast*** is the largest cable operator in the United States and offers a variety of consumer entertainment and communication products and services.  As of December 31, 2006, the Company's cable systems served approximately 23.4 million video subscribers, 11 million high-speed Internet subscribers and 2.4 million phone subscribers and passed approximately 45.7 million homes in 39 states and the District of Columbia.  Comcast was incorporated under the laws of Pennsylvania in December 2001 and is the Plans' sponsor.

19.    Throughout the Class Period, Comcast's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plans and the Plans' assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plans that it appointed, or to whom it assigned fiduciary responsibility. Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets.

20.    ***Defendant Comcast Board of Directors***.  The Directors who served on the Comcast Board of Directors (the "Board") were fiduciaries of the Plans, because they exercised decision-making authority regarding the appointment of the Plans' fiduciaries and the management of the Plans' assets throughout the Class Period.  Among other things, the Board determined the annual profit sharing contributions that were made under the Plans.  Moreover,

- 5 -

Comcast acted through the Board in carrying out its Plans-related fiduciary duties and responsibilities, and, thus, members of the Board were fiduciaries to the extent of their personal exercise of such responsibilities.

21.     The "***Director defendants***" who served on the Board and acted as fiduciaries with respect to the Plans during the Class Period are as follows:

(a)     ***Defendant Brian L. Roberts ("B. Roberts")*** has served as a director and as the Company's President and Chief Executive Officer since November 2002 and Chairman of the Board since May 2004.  During the Class Period, defendant B. Roberts was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(b)     ***Defendant Ralph J. Roberts ("R. Roberts")*** has served as a director and Chair of the Executive and Finance Committee of the Board since November 2002. During the Class Period, defendant R. Roberts was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(c)     ***Defendant S. Decker Anstrom ("Anstrom")*** has served as a director since November 2002.   During the Class Period, defendant Anstrom was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with

respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and she exercised authority or control with respect to the management of the Plans' assets.

(d)     **Defendant Kenneth J. Bacon ("Bacon")** has served as a director since November 2002.  During the Class Period, defendant Bacon was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(e)     **Defendant Sheldon M. Bonovitz ("Bonovitz")** has served as a director since November 2002.  During the Class Period, defendant Bonovitz was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(f)     **Defendant Edward D. Breen ("Breen")** has served as a director since June 2005.   During the Class Period, defendant Breen was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(g)     **Defendant Julian A. Brodsky ("Brodsky")** has served as a director since November 2002.  During the Class Period, defendant Brodsky was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(h)     **Defendant Joseph J. Collins ("Collins")** has served as a director since October 2004.  During the Class Period, defendant Collins was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(i)     **Defendant Michael Cook ("Cook")** has served as a director since November 2002.  During the Class Period, defendant Cook was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(j)     **Defendant Jeffrey A. Honickman ("Honickman")** has served as a director since December 2005. During the Class Period, defendant Honickman was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the

management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(k)     **Defendant Dr. Judith Rodin ("Rodin")** has served as a director since November 2002.  During the Class Period, defendant Rodin was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, she possessed discretionary authority or discretionary responsibility in the administration of the Plans, and she exercised authority or control with respect to the management of the Plans' assets.

(l)     **Defendant Michael I. Sovern ("Sovern")** has served as a director since November 2002.  During the Class Period, defendant Sovern was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

(m)     **Defendant Lawrence J. Salva ("Salva")** is, and was at all relevant times, Comcast's Senior Vice President, Chief Accounting Officer and Controller.  Defendant Salva also signed both the Form 11-Ks for Comcast Corporation Retirement-Investment Plan and the Comcast Spectacor 401(K) Plan, dated June 27, 2007.  During the Class Period, defendant Salva was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plans' fiduciaries and with respect to the management of the Plans, he possessed discretionary authority or discretionary responsibility

in the administration of the Plans, and he exercised authority or control with respect to the management of the Plans' assets.

22.  ***Unknown Fiduciary defendants 1-30*** are residents of the United States and are or were fiduciaries of the Plans during the Class Period.  These defendants' identities are currently unknown to Plaintiff and, may include additional Comcast employees.  Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

23.  Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(l), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who were participants in or beneficiaries of the Plan at any time between February 1, 2007 to the present (the "Class Period") and whose accounts included investments in Comcast Stock.

24.  Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

25.  ***Numerosity.***  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, over ten thousand members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

26.  ***Commonality.***  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether defendants acted as fiduciaries;

- 10 -

(b)      Whether defendants breached their fiduciary duties to the Plans, Plaintiff

(c)      and members of the Class by failing to act prudently and solely in the interests of the Plans, and the Plans' Participants and beneficiaries;

(d)      Whether defendants violated ERISA;

(e)      Whether the Plans and members of the Class sustained a loss in vested benefits, and

(f)      What is the proper measure of loss to the Plans and subsequent allocation of vested benefits to the Plans' Participants.

27.      **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class because the Plans, Plaintiff and Class, sustained a decrease in vested benefits arising out of defendants' wrongful conduct in violation of federal law as complained of herein.

28.      **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29.      Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

30.      Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for defendants; (ii) defendants have acted or

refused to act on grounds generally applicable to the Plans and the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## THE PLANS

### The Plans

31.     The Plans are "employee pension benefit plans" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).

32.     The Plans are legal entities that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

33.     In this action for breach of fiduciary duty, the Plans are neither plaintiffs nor defendants.  Rather, Plaintiff requests relief for the benefit of the Plans and for the benefit of its Participants.

34.     The Plans are "defined contribution plans" or "individual account plans" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plans provide for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plans are based solely on the amounts allocated to each individual's account.

35.     The Plans are voluntary contribution plans whereby Participants make contributions to the Plans ("Voluntary Contributions") and direct the Plans to purchase

investments with those contributions from options pre-selected by defendants which are then allocated to Participants' individual accounts.

36.     The Comcast Corporation Retirement-Investment Plan, effective July 1, 2007, required that all employees hired on or after June 30, 2007 will be automatically enrolled in the Plan unless the employee elects not to be enrolled.

37.     In the Company's most recent Form 11-K for the Comcast Corporation Retirement-Investment Plan, dated June 27, 2007, the plan is described as the following:

> The following description of the Comcast Corporation Retirement-Investment Plan (the "Plan") provides only general information. Plan participants should refer to the Plan document and applicable amendments for a more complete description of the Plans' provisions. Copies of these documents are available from the Plan Administrator, Comcast Corporation ("Comcast", the "Company" or the "Plan Administrator"). Generally, all costs associated with administering the Plan are paid by the Plan Administrator.

> The Plan is a defined contribution plan qualified under Internal Revenue Code (the "Code") Sections 401(a), 401(k) and 401(m). The original Plan has been amended and restated to reflect mergers of other plans with and into the Plan and to make certain other technical, compliance and design changes. The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA").

> Full-time employees become eligible to participate in the Plan after completion of six months of service and part-time employees become eligible to participate in the Plan after one year and completion of 1,000 hours of service.  The maximum amount of eligible compensation that may be deferred is 50%, subject to certain limits imposed by the Code.  The Company matches 100% of the participant's contribution up to 6% of the participant's eligible compensation for such payroll period except for certain collectively bargained employees. Rollover contributions represent amounts transferred to the Plan from other qualified retirement plans.

> Each participant has at all times a 100% non-forfeitable interest in the participant's contributions and earnings attributable thereto. Company matching contributions for Plan years beginning after December 31, 2000 are fully and immediately vested. Company

matching contributions for Plan years ended on or prior to December 31, 2000 vested according to years of service.

38.    In the Company's most recent Form 11-K for the Comcast Spectacor 401(K) Plan, dated June 27, 2007, the plan is described as the following:

> The effective date of the Plan is January 1, 1992. The Plan is a defined contribution plan and is subject to the provisions of the Employee Retirement Income Security Act of 1974. The Plan covers "eligible employees," who have completed the requisite hours of service, as defined in the Plan document, and have attained age 21.   The following entities participate in the Plan, referred to collectively as "the Company":
>
> • Comcast Spectacor, L.P. (Plan Sponsor)
> • CSLP Baysox Club LLC
> • CSLP Keys Club LLC
> • CSLP Shorebirds Club LLC
> • Spectrum Arena Limited Partnership
> • Philadelphia Flyers, L.P.
> • Philadelphia 76ers, L.P.
> • Philadelphia Phantoms, L.P.
> • Comcast-Spectacor Foundation
> • Flyers Skate Zone, L.P.
> • Global Spectrum, L.P.
> • Spectacor, Inc.
> • Patron Solutions, L.P.
> • FPS Rink, L.P.
> • Disson Skating, LLC
>
> The Trustee and Record-keeper for the Plan is Citigroup Institutional Trust Company (the Trustee) and CitiStreet LLC, respectively.

**The Plans' Fiduciaries**

39.    ***Named Fiduciaries***.   ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).   The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.   ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

40.   ***De Facto Fiduciaries***.   ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.   Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

41.   Each of the defendants was a fiduciary with respect to the Plans and owed fiduciary duties to the Plans and its Participants under ERISA in the manner and to the extent set forth in the governing documents for the Plans, through their conduct, and under ERISA.

42.   As fiduciaries, defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plans -- and the Plans' investments -- solely in the interest of the Plans' Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

43.   Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plans' management and administration.   Rather, as set forth below, defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

## COMMON FACTUAL ALLEGATIONS

44.     The Class Period begins on February 1, 2007.  On that date, Comcast issued a press release announcing its financial results for the fourth quarter and year end of 2006, the period ended December 31, 2006.  For the quarter, the Company reported revenue of $7 billion, net income of $390 million, or $0.18 per share and that it added 1.6 million revenue generating units ("RGUs").  Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> 2006 was simply our best year ever.  Powered by our triple play offering and superior products, we added more RGUs than at any other time in our history and reported terrific growth in cable revenue and Operating Cash Flow.  This record-setting performance demonstrates substantial operating momentum, and we could not be more enthusiastic about the future.  Looking ahead, we are perfectly positioned to continue to offer consumers the best entertainment and communications value proposition available anywhere, and to continue to deliver significant value to our shareholders.
>
> Reflecting our strong results and outlook, our Board of Directors authorized a 3-for-2 stock split – the 11th stock split in our company's history.

45.     The February 1, 2007 press release also contained earnings guidance stating in pertinent part as follows:

> 2007 Financial Outlook
>
> •       Cable revenue growth of at least 12%.
>
> •       Cable Operating Cash Flow growth of at least 14%.
>
> •       Cable RGU net additions of approximately 6.5 million, 30% above 2006 RGU net additions of 5 million.
>
> •       RGU outlook includes an expected decrease of 500,000 ircuit – switched phone RGUs.

- Cable capital expenditures of approximately $5.7 billion, including commercial services capital expenditures of approximately $250 million.

- Corporate and other capital expenditures of approximately $250 million primarily due to the relocation of Comcast's headquarters.

- Consolidated revenue growth of at least 11%.

- Consolidated Operating Cash Flow growth of at least 13%.

- Consolidated Free Cash Flow approximately the same as 2006.

46.     The Company's financial results for the fourth quarter and year end of 2006, the period ending December 31, 2006, were repeated in the Company's Report on Form 10-K filed with the SEC on or about February 26, 2007, which was signed by defendants Roberts, among others.

47.     On April 26, 2007, Comcast issued a press release announcing its financial results for the first quarter of 2007, the period ended March 31, 2007.  For the quarter, the Company reported revenue of $7.4 billion, net income of $837 million, or $0.26 per share and that RGUs increased 1.8 million.  Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> We are off to a fabulous start to the year and see increasing momentum as we move ahead.  Strong consumer demand for our superior products delivered through our Triple Play offering resulted in another quarter of record performance at our cable division – and we are just getting started capitalizing on the triple play opportunity.  This was our 3rd consecutive quarter of record-breaking RGU growth and the 27th consecutive quarter of double digit OCF growth. We are highly confident that our strategy and focus on operational execution and product innovation will deliver great results in 2007 and beyond.

48.     The Company's financial results for the first quarter of 2007, the period ending March 31, 2007, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about April 27, 2007, which was signed by Defendant Salva.

49.     On May 1, 2007, the Company issued an outline of its growth strategy and prospects from its 2007 Analyst and Investor Meeting.  In that regard, the press release stated, in pertinent part, as follows:

> Brian Roberts, Chairman and CEO of Comcast Corporation, said, "The triple play is driving incredible operating momentum and we see that accelerating as it continues to roll out.  We now expect Comcast Digital Voice penetration to exceed 20% by the end of 2009.  As we have been reporting over the past several quarters, the triple play is increasing the already strong growth of our video and high-speed Internet services – we expect to deliver at least 7 million RGU additions per year through 2009.  The fundamentals of our business are extremely strong and we have never been more enthusiastic about the future of our company."

> Comcast's superior products continue to drive significant growth for the Company and will be discussed in detail throughout the day's presentations.  Executives from the Company will discuss the status of the triple play roll out and its accelerating positive impact on RGU additions, operating efficiency and financial results.

> *       *       *

> The Company believes that its financial performance will remain strong for the next several years:

> •       Cable revenue projected to grow a compounded average of 12% per year for 2007-2009.

> •       Cable Operating Cash Flow (OCF) projected to grow a compounded average of 14% per year for 2007-2009.

> •       Comcast Digital Voice (CDV) projected to reach a penetration level of 20-25% of the Company's available homes passed.

50.     On July 26, 2007, the Company issued a press release announcing its financial results for the second quarter of 2007, the period ended June 30, 2007.  For the quarter, the Company reported revenue of $7.7 billion, net income of $588 million, or $0.19 per share and that RGUs increased 1.6 million.  Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> We are again reporting double-digit growth in cable revenue, our 28th consecutive quarter of double-digit OCF growth and our fourth consecutive quarter of record breaking RGU additions.

> Demonstrating the appeal of our superior products and our Triple Play package, our cable division delivered 1.6 million RGU additions, 94% above last year's second quarter additions.  To achieve this record-breaking performance, we added more than 670,000 Comcast Digital Voice customers and, in just 2 years, have surpassed 3 million digital voice customers. We also successfully completed the immense operational task of deploying an unprecedented 2.1 million digital set-top boxes in the second quarter in advance of a July 1 regulatory deadline.

> We are on track for another outstanding year as we continue to execute on our time to market advantage.  We see cable growth accelerating in the second half of 2007 as we remain focused on delivering superior products and services to our customers.

51.     The July 26, 2007 press release also contained earnings guidance stating in pertinent part as follows:

> 2007 Financial Outlook

> For 2007, Comcast reaffirms the following previously issued guidance:

> •      Cable revenue growth of at least 12%.

> •      Cable Operating Cash Flow growth of at least 14%.

> •      Cable RGU net additions of approximately 6.5 million, 30% above 2006 RGU net additions of 5 million.

> •      RGU outlook includes an expected decrease of 500,000 circuit-switched phone RGUs.

- Cable capital expenditures of approximately $5.7 billion, including commercial services capital expenditures of approximately $250 million.

- Corporate and other capital expenditures of approximately $250 million primarily due to the relocation of Comcast's headquarters.

- Consolidated revenue growth of at least 11%.

- Consolidated Operating Cash Flow growth of at least 13%.

- Consolidated Free Cash Flow approximately the same as 2006.

52.     The Company's financial results for the second quarter of 2007, the period ending June 30, 2007, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about July 27, 2007, which was signed by Defendant Salva.

53.     The statements referenced above in were materially false and misleading because they misrepresented and failed to disclose the following adverse facts which were known to defendants or recklessly disregarded by them:

(a)     that the Company was experiencing increased competition from satellite providers and telephone companies which was forcing it to spend more to attract and retain customers, and that this adverse trend was worsening;

(b)     that the Company's level of capital expenditures necessary to upgrade and maintain its technology and equipment was rising beyond internal expectations; and

(c)     as a result of the foregoing, defendants' positive statements about the Company and their earnings guidance were lacking in a reasonable basis at all times.

54.     On October 25, 2007, the Company issued a press release announcing its financial results for the third quarter of 2007, the period ended September 30, 2007.  For the quarter, the Company reported revenue of $7.8 billion and net income of $560 million, or $0.18 per share.

Moreover, the Company reported that RGUs increased $1.4 million. Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> Our business continues to perform well both operationally and financially. We once again posted double-digit growth in revenue and operating cash flow, our two most important metrics. In addition, continued strong demand for our products powered our ability to reach 56 million RGUs at the end of the third quarter.
>
> We have transformed our company from a one-product provider of video to become the only company in the world able to offer video, high-speed Internet and phone services to over 40 million households. This provides us with a competitive advantage and will fuel our growth well into the future.
>
> Reflecting our strong confidence in the cash flow generation of our business, our Board of Directors has authorized a $7 billion increase to our stock repurchase program, bringing the total available to $8.2 billion. Our buyback program reflects our continuing commitment to returning capital to shareholders while preserving our financial flexibility and putting us in the best possible position to achieve our strategic and financial goals.

55. Upon this announcement, the price of Comcast common stock fell $2.57 per share, or approximately 11%, to close at $21.28 per share.

56. On December 4, 2007, after the markets closed, the Company issued a press release announcing that Michael Angelakis, Co-Chief Financial Officer, will participate in the 35th Annual UBS Global Media & Communications Conference on December 5, 2007 and discuss the Company's current outlook for 2007. In that regard, the press release stated, in pertinent part, as follows:

> Reflecting an increasingly challenging economic and competitive environment and consistent with trends across the sector, Revenue Generating Units(1) (RGUs) are now expected to increase by approximately 6 million to 57 million, versus previous guidance of approximately 6.5 million additions. This represents a significant increase compared to the 5 million RGUs added in 2006. This RGU growth is expected to contribute to cable revenue growth(2) for 2007 of approximately 11%, compared to previous guidance of at least 12%, cable operating cash flow growth(2) of approximately

13% as compared to previous guidance of at least 14%, and consolidated operating cash flow growth(2) of approximately 13% as compared to previous guidance of at least 13%.

Cable capital expenditures are expected to be approximately $6.0 billion for the year, a 5% increase from originally issued guidance, reflecting increased advanced digital set-top box purchases, the Company's digital acceleration program, expanded network enhancements and acquisition-related investments.

Reflecting the impact of all the items described above, Comcast's consolidated Free Cash Flow is expected to be approximately 80% of 2006, compared to previous estimates of 2007 consolidated Free Cash Flow of at least 90% of 2006.

Except for the items mentioned above, Comcast is reaffirming all previously issued guidance for 2007.

With the current outlook of 6 million RGU additions, 11% cable revenue growth, and 13% cable operating cash flow growth, 2007 will be a year of record RGU additions and solid financial performance, with the Company enjoying its 8th consecutive year of double digit cable operating cash flow growth.

57.     Upon this news, the price of Comcast common stock fell an additional $2.55 per share, or approximately 12%, to close at $18.18 per share, on heavy trading volume.

58.     In short, the Company disclosed that it was cutting forecasts for sales, new customers, and cash flow.  Specifically, free cash flow will drop by 20 percent over last year, rather than the 10 percent decline previously forecasted.  Also, the Company stated it would add only 6 million customers, instead of the 6.5 million projected earlier.

59.     These disclosures stood in stark contrast to the Company's October 25, 2007 announcement reiterating its 2007 outlook.  Indeed, Sanford C. Bernstein & Co., analyst Craig Moffett stated as follows:

Investors may vent their frustrations that Comcast failed to take their medicine when they announced their results....  Mysteriously, full-year guidance was left intact, which meant they expected a dramatic acceleration of subscriber additions in the fourth quarter.

60.     Other securities industry analysts expressed concern with the Company's and Management's disclosures during 2007. A Pali Research note authored by Richard Greenfield entitled "Mgmt Needs to Restore Credibility in the New Year. . ." commented on the Company's moving estimates:

> In the last quarter of 2007, Comcast's own guidance for 2007 free cash flow went from about "flat" to down 20% through two separate guidance revisions. While lowering free cash flow guidance is not historically "unusual" event for Comcast, we have been genuinely surprised by the speed and magnitude of the reductions in the last few months – particularly in contrast to management's comments in April 2007 ("it's all clicking, our business is on fire") and their bullish tone at the company's May 2007 analyst meeting.

61.     Further, during the Class Period, Defendant Roberts sold 350,000 shares of his personally-held Comcast stock for gross proceeds in excess of $9,144,625.

## THE LAW UNDER ERISA

62.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

63.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

64.     ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the Participants and beneficiaries, for the exclusive purpose of providing benefits to

Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

65.     These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

(a)     The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plans, which invested in Comcast Stock, to ensure that each investment is a suitable option for the Plans;

(b)     The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan's sponsor; and

(c)     A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

66.     ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or

omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

67.    Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for relief of the Plans under ERISA § 409(a) to recover losses sustained by the Plans arising out of the breaches of fiduciary duties by defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

## DEFENDANTS' FIDUCIARY STATUS

68.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

69.    During the Class Period, all of defendants acted as fiduciaries of the Plans pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section. As outlined herein, defendants all had discretionary authority and control with respect to the management of the Plans and/or the management or disposition of the Plans' investments and assets, and/or had discretionary authority or responsibility for the administration of the Plans.

70.    During the Class Period, defendants' direct and indirect communications with the Plans' Participants included statements regarding investments in Company Stock. Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plans' Participants via the Company's website and documents related to the Plans which incorporated and/or reiterated these statements. defendants also acted as fiduciaries to the extent of this activity.

71.     In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable.  To the extent any of the defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

## CAUSES OF ACTION

## COUNT I

### Failure to Prudently and Loyally Manage the Plans' Assets
### (Breaches of Fiduciary Duties in Violation of ERISA § 404 by All defendants)

72.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

73.     At all relevant times, as alleged above, defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

74.     As alleged above, defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plans' investment options, including the option of Company Stock.

75.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a Plans' assets are responsible for ensuring that investment options made available to participants under a plan are prudent.  Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. defendants were responsible for ensuring that all investments in Comcast Stock in the Plans were prudent and that such investment was consistent with the purpose of the Plans.  defendants are therefore liable for losses incurred as a result of such investments being imprudent.

76.     A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would

otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

77.     Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, defendants failed to take any meaningful steps to prevent the Plans, and indirectly the Plans' Participants and beneficiaries, from suffering losses as a result of the Plans' investment in Comcast Stock.  Further, given that such a high concentration of the assets of the Plans were invested in the stock of a single company (Comcast), defendants were obliged to have in place some financial strategy to address the extreme volatility of single equity investments. All categories of defendants failed to implement any such strategy.

78.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

79.     defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plans' assets with respect to offering Company Stock as an investment option in the Plans; enabling defendants' failure to prudently manage the Plans' assets with respect to the Plans' investments; and, having knowledge of the failure to prudently manage the Plans' assets, yet not making any effort to remedy the breach.

80.     Specifically, at least some of the defendants had actual knowledge of Comcast's corporate malfeasance and questionable reporting and business.  In addition, in light of their high-ranking positions as high ranking officers at the Company, Director defendants had/should have had constructive knowledge of these activities.

81.     Despite this knowledge, defendants participated in each other's failures to prudently manage the Plans' assets and knowingly concealed such failures by not informing Participants that the Plans' holdings of Comcast Stock were not being prudently managed.  They also failed to remedy their mutual breaches of the duty to prudently manage the Plans' investment in Comcast Stock, despite inarguably having knowledge of such breaches.

82.     Furthermore, through their own failure to prudently and loyally manage the Plans' investment in Comcast Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, defendants named in this Count enabled their co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plans' investment in Comcast Stock.

83.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

### Failure to Provide Complete and Accurate Information to Participants and Beneficiaries (Breaches of Fiduciary Duties in Violation of ERISA § 404 by All defendants)

84.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

85.     At all relevant times, as alleged above, defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

86.     As alleged above, the scope of defendants' fiduciary duties and responsibilities included disseminating documents to the Plans and information to Participants regarding the Plans and assets of the Plans.  In addition, defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plans.

87.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plans or the Plans' assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plans. This duty to inform Participants includes an obligation to provide Participants and beneficiaries of the Plans with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plans' investment options such that Participants can make informed decisions with regard to investment options available under the Plans, this duty applies to all of the Plans' investment options, including investment in Comcast Stock.

88.     Because a substantial percentage of the Plans' assets were invested in Comcast Stock, and defendants chose to invest overwhelmingly in Comcast Stock, such investment

carried with it an inherently high degree of risk.  This inherent risk made defendants' duty to provide complete and accurate information particularly important with respect to Company Stock.

89.     Specifically, Comcast, through its officers and directors issued a multitude of false and misleading statements through SEC filings and press releases regarding value of Comcast Stock and the financial health of the Company.

90.     Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports furnished by Comcast, through its officers and Director defendants.  In addition, upon information and belief, the Company communicated directly with all Participants regarding the merits of investing in Comcast Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding Comcast Stock as required by ERISA.

91.     In addition, defendants were responsible for providing Participants in the Plans with investment education and communication.  defendants, however, failed to disclose any information to the Plans' Participants regarding Comcast's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plans.  defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plans.

92.     defendants named in this Count breached their duty to inform Participants by failing to provide complete and accurate information regarding Comcast Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying

inaccurate information regarding the soundness of Comcast Stock and the prudence of investing retirement contributions in the Company's stock.

93.     These failures were particularly devastating to the Plans and the Participants, as a significant percentage of the Plans' assets were invested in Comcast Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

94.     In addition, Comcast and the other defendants named in this Count knew or should have known that information they possessed regarding the true condition of Comcast would have an extreme impact on the Plans.  Yet, in violation of their fiduciary duties, these defendants failed to provide Participants with this crucial information.

95.     As a consequence of the failure of defendants named in this Count to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in Comcast Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, Comcast Stock was an inherently unsuitable and inappropriate investment option for their Plans' accounts.  Had accurate information been provided, Participants could have protected themselves against losses accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by defendants in their fiduciary communications and failures thereof.

96.     As a consequence of defendants' breaches of fiduciary duty alleged in this Count, the Plans suffered tremendous losses.  If these defendants had discharged their fiduciary duties to prudently invest the Plans' assets, the losses suffered by the Plans would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary

duties alleged herein, the Plans, and indirectly Plaintiff and the other Class members, lost millions of dollars of retirement savings.

97.     Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

**COUNT III**

**Failure to Monitor and Provide the Appointed Fiduciaries of the Plans
with Accurate Information (Breaches of Fiduciary Duties in
Violation of ERISA § 404 by Comcast and the Board of Directors)**

98.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

99.     At all relevant times, as alleged above, Comcast and the Director defendants named in this Count were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  At all relevant times, as alleged above, the scope of the fiduciary responsibilities of Comcast and the Director defendants named in this Count included the responsibility to appoint, evaluate, and monitor other fiduciaries.   The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries. The monitoring fiduciaries, Comcast and the Director defendants named in this Count, had the duty to:

(a)     Ensure that the appointed fiduciaries of the Plans possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plans, the goals of the Plans, as noted above, and the behavior of the Plans' Participants;

(b)     Ensure that the appointed fiduciaries of the Plans are provided with adequate financial resources to do their job;

(c)     Ensure that the appointed fiduciaries of the Plans have adequate information to do their job of overseeing the Plans' investments;

(d)     Ensure that the appointed fiduciaries of the Plans have ready access to outside, impartial advisors when needed;

(e)     Ensure that the appointed fiduciaries of the Plans maintain adequate records of the information on which they base their decisions and analysis with respect to the Plans' investment options; and

(f)     Ensure that the appointed fiduciaries of the Plans report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

100.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.   In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

101.    Comcast and the Director defendants named in this Count breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plans' fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plans' investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and

file employees in an undiversified employer stock fund which was made up primarily of Company Stock, an investment that was imprudent and inherently subject to significant downward movements, especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

102.    Comcast and Director defendants also breached this duty by not properly disclosing information that they knew or should have known, about the Company's improper business practices to the Trustee.  The Trustee is responsible for investing and managing assets of the Plans.  However, in doing so, the Trustee shall be subject to the direction and guidance of Comcast

103.    Comcast and the other defendants named in this Count, knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plans to continue offering Comcast Stock as an investment alternative for the Plans, and (b) continuing to invest the assets of the Plans in Comcast Stock when it no longer was prudent to do so.  Despite this knowledge, Comcast and the Director defendants named in this Count failed to take action to protect the Plans, and concomitantly the Plans' Participants, from the consequences of these fiduciaries' failures.

104.    Comcast and the Director defendants named in this Count are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed fiduciaries of the Plans, they enabled the breaches by these defendants, and failed to make any effort to remedy these breaches, despite having knowledge of them.

105.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly the Plaintiff and the Plans' other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

106.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

**Breach of Duty to Avoid Conflicts of Interest**
**(Breaches of Fiduciary Duties in Violation of**
**ERISA §§ 404 and 405 by All defendants)**

107.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

108.    At all relevant times, as alleged above, all defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

109.    ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

110.    Given the allegations listed above, defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plans and its Participants and beneficiaries.  These conflicts of interest put defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and Comcast stockholders), and the interests of the Plans' Participants and beneficiaries, in whose interests defendants were obligated to loyally serve with an "eye single."

111.    defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make

independent judgments concerning the Plans' investment in Comcast Stock; failing to notify appropriate federal agencies, including the SEC of the facts and transactions which made Comcast Stock an unsuitable investment for the Plans; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plans' investment in Company Stock.

112.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V

### Co-Fiduciary Liability
### (Breaches of Fiduciary Duties in Violation of ERISA § 405 by All defendants)

113.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

114.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

115.    As alleged herein, Comcast, through its officers and employees withheld material information from the Plans' Participants and provided misleading disclosures, by the conduct set forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to these defendants as a matter of law.  In addition, as alleged herein on information and belief, Comcast and the other defendants named in this Count participated in and/or knew about the Company's misrepresentations regarding the Company's financial condition.   Thus, these defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of Comcast Stock as an investment for the Participants' retirement assets.

116.    Despite this knowledge, defendants named in this Count knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plans' investment and holding of Comcast Stock during the Class Period.   They did so by themselves making imprudent and disloyal decisions respecting the Plans' investment in Comcast Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A).  In addition, these same defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plans' investment in Comcast Stock despite knowing such failures were breaches of fiduciary duty under ERISA. Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

117.    In further violation of ERISA § 405(a)(l)(C), defendants named in this Count also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole.   Instead, they compounded the problem by downplaying the significance of Comcast's problems and further concealing such practices from Participants and the market as a whole.

118.    In addition, defendants named in this Count enabled the imprudent asset management decisions of any and all other Defendant -- including any appointed fiduciaries of the Plans -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plans caused by the Company's improper practices, so that these other defendants could effectively discharge their obligation to prudently and loyally manage the Plans' investment in Comcast Stock.   In so doing, these defendants breached ERISA § 405(a)(l)(B).

119.    Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, defendants named in this Count enabled these appointed fiduciaries of the Plans to imprudently manage the Comcast Stock in the Plans.

120.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other Participants and beneficiaries, lost a significant portion of their retirement investment.

121.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

### Knowing Participation in a Breach of Fiduciary Duty
### (Breaches of Fiduciary Duties in Violation of
### ERISA §§ 404 and 502(a)(3) by Comcast)

122.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

123.    To the extent that Comcast is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, Comcast knowingly participated in the breaches of those defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

124.    Comcast benefited from the breaches by discharging its obligations to make contributions to the Plans in amounts specified by contributing Comcast Stock to the Plans while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged herein and as a result of Comcast providing the market with materially misleading statements and omissions.  Accordingly, Comcast may be required to disgorge this benefit or a constructive trust should be imposed on treasury shares of Comcast Stock which would have been contributed to the Plans, but for Comcast's participation in the foregoing breaches of fiduciary duty.

### CAUSATION

125.    The Plans suffered millions of dollars in losses in plan benefits because substantial assets of the Plans were imprudently invested or allowed to be invested by defendants in Comcast Stock during the Class Period, in breach of defendants' fiduciary duties.  These losses to the Plans were reflected in the diminished account balances of the Plans' Participants.

126.    defendants are responsible for losses in the Plans' benefits caused by the Participants' direction of investment in Comcast Stock, because defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. defendants concealed material, non-public facts from Participants, and provided inaccurate, incomplete and materially misleading information to them regarding the true health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle. As a consequence, Participants could not exercise independent control over their investments in Comcast Stock, and defendants remain liable under ERISA for losses caused by such investment.

127.    defendants are also responsible for all losses in the Plans' benefits caused by the investment of the Plans' Company Contributions in Comcast Stock during the Class Period, as defendants controlled the investment, and the investment was imprudent.

128.    Had defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Comcast Stock, eliminating such Company Stock as an investment alternative when it became imprudent, and divesting the Plans from its holdings of Comcast Stock when maintaining such an investment became imprudent, the Plans would have avoided a substantial portion of the losses that it suffered.

129.    Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiff relied to their detriment on the misstatements and omissions that defendants made to the Plans' Participants.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

130.   defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plans' assets should not have been invested in Comcast Stock during the Class Period.   As a consequence of defendants' breaches, the Plans suffered significant losses.

131.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary. . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ."  Section 409 also authorizes such other equitable or remedial relief as the court may deem appropriate . . . ."

132.   With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the values of the Plans' assets to what they would have been if the Plans had been, properly administered.

133.   Plaintiff and the Class are therefore entitled to relief from defendants in the form of: (a) a monetary payment to the Plans to make good to the Plans for the losses to the Plans resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c)

reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

134.    Under ERISA, each Defendant is jointly and severally liable for the losses suffered by the Plans in this case.

## ERISA SECTION 404(c) DEFENSE INAPPLICABLE

135.    ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions.    In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

136.    Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, defendants did exactly the opposite.   As a consequence, Participants in the Plans did not have informed control over the portion of the Plans' assets that were invested in Comcast Stock as a result of their investment directions, and defendants remained entirely responsible for losses that result from such investment.

137.    Because ERISA § 404(c) does not apply here, defendants' liability to the Plans, the Plaintiff and the Class for relief stemming from Participants' decisions to invest contributions in Comcast Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plans during the Class Period.

138.    Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.   Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the Plans suffer a loss.  Because this is precisely what occurred in this case, defendants are liable for the losses incurred by the Plans.

139.    Finally, defendants remain liable for the Plans losses that pertain to Comcast Stock acquired by the Plans with employer contributions, as Participants did not exercise any control.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.      A Declaration that defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.      A Declaration that defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

C.      An Order compelling defendants to make good to the Plans all losses to the Plans resulting from defendants' breaches of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the Plans' assets, and to restore to the Plans all profits defendants made through use of the Plans' assets, and to restore to the Plans all profits which the Participants would have made if defendants had fulfilled their fiduciary obligations;

D.      Imposition of a Constructive Trust on any amounts by which any

Defendant was unjustly enriched at the expense of the Plans as the result of breaches of fiduciary duty;

       E.      An Order enjoining defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

       F.      An Order requiring defendants to appoint one or more independent fiduciaries to participate in the management of the Plans' investment in Comcast Stock;

       G.      Actual damages in the amount of any losses the Plans suffered, to be allocated among the Participants' individual accounts as benefits due in proportion to the accounts' diminution in value;

       H.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

       I.      An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

       J.      An Order for equitable restitution and other appropriate equitable monetary relief against defendants.

Dated:  February 15, 2008

                    By:     *s/ Michael Donovan*
                           Michael D. Donovan
                           **DONOVAN SEARLES, LLC**
                           1845 Walnut Street
                           Suite 1100
                           Philadelphia, PA  19103
                           (215) 732-6067 (Telephone)
                           (215) 732-8060 (Fax)

                           **GAINEY & McKENNA**
                           Thomas J. McKenna
                           295 Madison Avenue
                           New York, NY 10017
                           Tel: (212) 983-1300
                           Fax: (212) 983-0383
                           Email: tjmckenna@gaineyandmckenna.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Fred Taylor Isquith
Gregory Mark Nespole
George Theodore Peters
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 545-4657
Email: Isquith@whafh.com

***Attorneys for Plaintiff***